NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ASSA ABLOY AB, ASSA ABLOY INC., HID GLOBAL CORP., ASSA ABLOY GLOBAL SOLUTIONS, INC., MASTER LOCK COMPANY LLC,**
*Appellants*

**v.**

**CPC PATENT TECHNOLOGIES PTY LTD.,**
*Appellee*

---

2025-1078, 2025-1079, 2025-1080

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2022-01006, IPR2022-01045, IPR2022-01089.

---

Decided:  July 15, 2026

---

LIONEL M. LAVENUE, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Reston, VA, argued for appellants. Also represented by ATIYA SAFIYA AGUILAR, DAVID MROZ, Washington, DC.

STEVEN M. COYLE, Cantor Colburn LLP, Hartford, CT, argued for appellee.  Also represented by NICHOLAS GEIGER.

_____

Before REYNA, CHEN, and STOLL, *Circuit Judges.*

CHEN, *Circuit Judge.*

ASSA ABLOY AB (ASSA) appeals the final written decisions of the Patent Trial and Appeal Board (Board) ruling that ASSA failed to prove that the challenged claims[1] of U.S. Patent No. 9,665,705 ('705 patent) and U.S. Patent No. 9,269,208 ('208 patent) are unpatentable under 35 U.S.C. § 103. *ASSA ABLOY AB v. CPC Pat. Techs. Pty Ltd.*, No. IPR2022-01006, 2024 WL 3799645 (P.T.A.B. Aug. 13, 2024) (FWD)[2]; *ASSA ABLOY AB v. CPC Pat. Techs. Pty Ltd.*, Nos. IPR2022-01045, IPR2022-01089, 2024 WL 3799652 (P.T.A.B. Aug. 13, 2024). Because ASSA has not shown that the Board's claim construction is incorrect, or that the Board failed to address any of ASSA's petitioned-for unpatentability grounds, we *affirm*.

## BACKGROUND

The '705 patent describes an authentication process in which a user requests access to a controlled item through

_____

[1] The challenged claims refer to claims 1–17 of the '705 patent and claims 1–13 of the '208 patent. In separate *inter partes* reviews brought by Apple (Apple IPRs), claims 1, 4, 6, 10–12 and 14–17 of the '705 patent and claims 1, 3–7, 9–11, and 13 of the '208 patent were held unpatentable, and this Court affirmed those decisions. *See CPC Pat. Techs. Pty Ltd. v. Apple Inc.*, Nos. 2024-1278, 2024-1354, 2025 WL 2248796 (Fed. Cir. Aug. 7, 2025). Several challenged claims, however, remain valid.

[2] We cite the '705 patent and the Board's FWD concerning the '705 patent, because the '705 and '208 patents share the same specification and recite materially similar claims, and because the Board's analyses are likewise materially similar. *See* Appellant Br. 7 n.1.

"a biometric sensor." '705 patent col. 5 ll. 56–63. For example, when the biometric sensor is a fingerprint sensor, the user provides "a thumb press on a sensor panel." *Id.* col. 5 ll. 60–63. The system then compares the received biometric signal (e.g., a fingerprint) against a database containing biometric signatures for authorized users. *Id.* col. 11 ll. 40–45; *id.* col. 12 ll. 15–16. If the received biometric signal matches a biometric signature in the database, the system grants the user access to the controlled item. *Id.* col. 12 ll. 16–24.

The '705 patent also describes an enrollment process, in which an administrator enrolls a new user by "provid[ing] control information." *Id.* col. 10 ll. 56–60. An example of such control information is when an administrator applies a series of finger presses, *e.g.*, "dit, dit, dit, dah, where "'dit' is a finger press of one second's duration" and "'dah' is a finger press of two second's duration." *Id.* col. 11 ll. 3–7. However, "[i]n the event that a legitimate sequence of finger presses [is] not delivered within the predetermined time, then the [finger] presses are considered not to be control information and merely to be presses intended to provide access to the controlled item." *Id.* col. 11 ll. 9–13. That is, the system, under those circumstances, does not consider those finger presses to be part of an enrollment process but instead considers the finger presses as attempts at an authentication process.

Claim 1 of the '705 patent is representative and recites a system that performs both the authentication process and the enrollment process:

> 1. A system for providing secure access to a controlled item, the system comprising:
>
> a memory comprising a database of biometric signatures;
>
> a transmitter sub-system comprising:

4        ASSA ABLOY AB v. CPC PATENT TECHNOLOGIES PTY LTD.

a biometric sensor configured to receive *a biometric signal*;

a transmitter sub-system controller configured to match *the biometric signal* against members of the database of biometric signatures to thereby output an accessibility attribute; and

a transmitter configured to emit a secure access signal conveying information dependent upon said accessibility attribute; and

a receiver sub-system comprising:

a receiver sub-system controller configured to:

receive the transmitted secure access signal; and

provide conditional access to the controlled item dependent upon said information;

wherein the transmitter sub-system controller is further configured to:

[D(1)[3]] receive a series of entries of *the biometric signal*, said series being characterised according to at least one of the number of said entries and a duration of each said entry;

[D(2)] map said series into an instruction; and

[D(3)] populate the data base according to the instruction, wherein the controlled item is one of: a locking mechanism of a physical access structure or an electronic lock on an electronic computing device.

---

[3]    The Board referred the enrollment process limitations as limitations D(1), D(2), and D(3). *See* FWD, 2024 WL 3799645, at *43–45.

*Id.* col. 15 l. 62 – col. 16 l. 23 (emphases added).

ASSA filed three *inter partes* review (IPR) petitions, one challenging the '705 patent's claims and two challenging the '208 patent's claims. J.A. 1007, 4742, 5944. In each IPR, ASSA asserted the same obviousness ground based on U.S. Patent No. 6,256,737 (Bianco) and WIPO Publication No. 2002028067 (Mathiassen).[4] J.A. 1016, 4750, 5951. The Board instituted all three petitions. J.A. 4, 106.

The Board, in its initial FWD, construed "biometric signal" to mean "a physical or behavioral biometric attribute that provides secure access to a controlled item." J.A. 1818. Based on that construction, the Board found the challenged claims not unpatentable, because the asserted prior art did not disclose limitations [D(1)]–[D(3)] (*i.e.*, the enrollment process limitations). J.A. 1831–37. ASSA sought Director review, arguing that the Board erroneously added a functional requirement for a biometric signal. J.A. 1846. The Director vacated the Board's construction and authorized supplemental briefing on claim construction but did not opine on the merits. J.A. 1861–63.

On remand, the Board revised its claim construction to "a physical or behavioral biometric attribute" by removing the functional requirement. FWD, 2024 WL 3799645, at *1. It rejected ASSA's proposed construction—"the input and output of a biometric sensor"—as "too broad because it allows for any type of input." *Id.* at *34. The Board explained that "whatever form the biometric signal takes, it must be matched with a coordinated biometric sensor;" that is, "[i]f the 'input' to the biometric sensor is a series of numbers or letters, for example, that input would not be accepted by the sensor as a 'biometric signal.'" *Id.* The Board also noted that its construction was consistent with

---

4    Other grounds are not relevant to this appeal.

its prior construction in the Apple IPRs challenging claims of the '705 and '208 patents. *Id.* at \*1.

Under the revised claim construction, the Board reached the same obviousness determination, finding that the enrollment process limitations were not met. *Id.* at \*43–45. ASSA had relied on Mathiassen's "multiple finger-tap control system to send any of Bianco's control signals," but the Board found that Mathiassen's finger-taps "are merely the touching of a touch-sensitive pad during which no biometric measurement is taken at all." *Id.* at \*42, \*44. The Board emphasized that Mathiassen discloses a navigation mode and an authentication mode, and the relied-upon finger-taps occur in the navigation mode. *Id.* at \*44–45; *see also* Mathiassen col. 21 ll. 15–39. The Board concluded that Mathiassen's sensor in the touch-sensitive pad, when in the navigation mode, does not receive "a series of entries of the *biometric signal*" because the sensor "is no longer functioning as a fingerprint sensor," and thus not reading a person's fingerprint. *Id.* at \*45.

ASSA timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

ASSA argues that (1) the Board's construction of "biometric signal" improperly excludes its patents' only disclosed embodiment for enrolling new users and (2) the Board failed to address its arguments that Bianco alone disclosed or rendered obvious the enrollment process limitations. Appellant Br. 29–30.

## I

We begin with the claim construction issue. "We review the issue of claim construction of a patent claim de novo with any underlying fact findings reviewed for substantial evidence." *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1054 (Fed. Cir. 2024) (citation omitted).

ASSA contends that the Board's construction of "biometric signal" excludes the only disclosed enrollment embodiment, in which the administrator enters "dit, dit, dit, dah" finger presses to enroll new users. Appellant Br. 35–44. ASSA urges this Court to adopt its proposed construction: "the input and output of the biometric sensor." *Id.* at 44–49. Such a broad construction would encompass inputs to a biometric sensor in which the sensor does not read any biometric information from the input.

The Board's construction, "a physical or behavioral biometric attribute," is correct. First, a plain reading of the claim language indicates that "a series of entries of *the* biometric signal" refers to the earlier recited "a biometric signal" that is being "receive[d]" by "a biometric sensor" and used "to match . . . against members of the database of biometric signatures." '705 patent at claim 1 (emphasis added). Based on this claim language, the Board correctly noted that the claimed "biometric signal" is "a signal that can be received and processed by a biometric sensor and by a transmitter subsystem, and also can be matched to a database." FWD, 2024 WL 3799645, at *33. That is, contrary to ASSA's proposal, the "biometric signal" cannot be merely any input and output of a biometric sensor.

Second, the Board's construction does not exclude the enrollment embodiment disclosed in the specification. The administrator's "dit, dit, dit, dah" finger presses are biometric attributes because the system reads the administrator's fingerprint from these finger presses. The specification explains that if the series of finger presses is not entered within the predetermined time, the system will interpret those finger presses as "intended to provide access to the controlled item." '705 patent col. 11 ll. 1–14. That is, they are considered attempts to authenticate the user through fingerprint reading. *Id.* col. 5 l. 54 – col. 6 l. 4. Accordingly, the disclosed system's biometric sensor continues to read biometric information from the finger presses during an attempted enrollment process, and the

Board's biometric signal construction does not exclude the enrollment embodiment.

ASSA provides no persuasive reason for its view that the biometric sensor's ability to read a fingerprint is effectively turned off during the enrollment process. ASSA contends this is so because "the administrator was already authenticated before the control information was provided." Appellant Reply Br. 3. But the specification does not support this reading, and, as explained above, suggests the opposite reading. *See generally* '705 patent col. 11 ll. 1–14.[5] ASSA's additional argument that the system checks Read Only Memory during an enrollment process rather than a biometric database is irrelevant, because nothing in the specification suggests that the biometric sensor ever gets turned off, during either the authentication process or the enrollment process. *See* Appellant Reply Br. 12; '705 patent col. 12 ll. 15–16. More critically, ASSA does not meaningful engage with the claim language "*the* biometric signal," which refers back to the previously-recited "biometric signal" that is being read by the biometric sensor. We reject ASSA's view that "biometric signal" should have a different meaning when recited in different parts of the same claim. Appellant Br. 47. Therefore, we reject ASSA's claim construction arguments and adopt the Board's construction.[6]

---

[5] In the Apple IPRs, the Board similarly noted that a "fingerprint sensor's ability to recognize a fingerprint is not turned off when a succession of finger presses is applied to the fingerprint sensor." *Apple Inc. v. CPC Pat. Techs. Pty Ltd.*, No. IPR2022-00602, 2023 WL 6617490, at *15 (P.T.A.B. Sept. 27, 2023).

[6] We need not address ASSA's arguments regarding the Board's factual findings on Mathiassen, because ASSA relies solely on an erroneous claim construction as the basis for those arguments. *See* Appellant Br. 38–44.

## II

ASSA next argues that the Board failed to address its Bianco arguments for enrollment process limitations. Appellant Br. 49. According to ASSA, it presented a Bianco-only unpatentability ground, as a standalone unpatentability theory, in its petitions and continued to pursue this theory in its supplemental briefing. *Id.* at 49–54.

We are not persuaded. The Board's decisions did not address a Bianco ground because ASSA's petitions did not present one. *See* J.A. 1053–64 (the '705 patent petition); *see* J.A. 4787–801 (the '208 patent petition). "It is of the utmost importance that petitioners in the IPR proceedings adhere to the requirement that the initial petition identify 'with particularity' the 'evidence that supports the grounds for the challenge to each claim.'" *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016) (quoting 35 U.S.C. § 312(a)(3)). We also have explained that "[a] petitioner may not rely on a vague, generic, and/or meandering petition and later fault the Board for failing to understand what the petition really meant." *Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1377 (Fed. Cir. 2023).

Here, ASSA did not present an argument relying on Bianco alone. Rather, ASSA's consistent position was an obviousness theory based on the Bianco-Mathiassen combination. *See* J.A. 1053–64; J.A. 1566 (ASSA's reply). In particular, ASSA relied entirely on Mathiassen for limitation [D(2)]. J.A. 1055 ("Looking toward the next limitation D(2), Mathiassen expressly teaches using the number/duration of the biometric entries"), 1059 ("Mapping the series of biometric entries into an instruction is expressly taught by Mathiassen"), 1061 ("Therefore, Mathiassen discloses [D(2)]"). And the Board properly considered ASSA's limited arguments relying on Bianco, in combination with Mathiassen. *See, e.g.*, FWD, 2024 WL 3799645, at *43 (noting that Bianco's signature is a biometric signal). ASSA raised

a Bianco-only ground for the first time in its supplemental brief following Director review. *See* J.A. 1913. As such, that argument was untimely. *See, e.g., Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1002 (Fed. Cir. 2023) ("[A]n IPR petitioner may not raise in reply an entirely new rationale for why a claim would have been obvious.") (citation omitted). Accordingly, we see no error in the Board's obviousness determination.

## CONCLUSION

We have considered ASSA's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.

**AFFIRMED**